# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Bankruptcy No. 17-30061 |
| McM, Inc., | Chapter 7 |
|     Debtor. | |
| _____/ | |
| Erik A. Ahlgren, Trustee, | |
|     Plaintiff, | |
| vs. | Adversary No. 19-07002 |
| Scott Morrison in his capacity as trustee of the Morrison Family Trust, and Elkhorn Farms, LLP, | |
|     Defendants, | |
| _____/ | |

## MEMORANDUM AND ORDER

Plaintiff Erik A. Ahlgren, Trustee, filed a Complaint on January 9, 2019, alleging Defendant Scott Morrison (in his capacity as Trustee of the Morrison Family Trust) transferred a leasehold interest that was property of Debtor McM, Inc.'s estate. Doc. 1 at ¶ 18. He asks the Court to avoid the transfer as an unauthorized postpetition transfer under 11 U.S.C. § 549 (Count I). The Trustee also alleges Morrison breached the lease with Debtor by entering a new lease with Defendant Elkhorn Farms with respect to the same property Debtor originally leased from Morrison (Count II). Id. at ¶ 23. Next, the Trustee alleges that both Morrison and Elkhorn violated the automatic stay under 11 U.S.C. § 362(a)(3) (Count III). Id. at ¶ 27. Finally, the Trustee objects to any claim by Elkhorn or Morrison under 11 U.S.C. § 502(d) until the bankruptcy estate is made whole (Count IV). Id. at ¶ 31. Morrison and Elkhorn each filed an Answer on February 8, 2019. Docs. 5, 6. Both Morrison and Elkhorn deny the Trustee's

1

allegations and seek dismissal of the Complaint. Docs. 5, 6.

The Trustee filed a motion for summary judgment. Doc. 18. Morrison and Elkhorn filed a joint opposition to the motion for summary judgment. Doc. 21. For the reasons that follow, the Trustee's motion for summary judgment is DENIED.

## I. BACKGROUND

Morrison Family Trust leased 110 acres of farmland to McMartin Family Partnership under a lease with a five-year term, 2013 through 2018. McMartin Family Partnership was reorganized and renamed McM, Inc., which is the debtor in the bankruptcy case underlying this adversary proceeding. On February 2, 2017, Ronald G. McMartin, Jr., a principal of Debtor, wrote a $22,000 personal check to Morrison for the 2017 land rent under the lease.

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 10, 2017.

On March 22, 2017, Morrison Family Trust and Elkhorn entered a two-year (2017 and 2018) lease for the same land Debtor leased from Morrison Family Trust. Doc. 18 at 17. On April 26, 2017, Elkhorn paid McMartin $22,500, issuing a check notated "Land Rent Reimbursement."

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial responsibility of identifying pleadings, discovery, testimony and other evidence which it believes demonstrate "the absence of a genuine issue of material fact." Celotex Corp., 477 U.S.

at 323.  The moving party satisfies this burden by showing "an absence of evidence to support the nonmoving party's case."  Id. at 325.  When the moving party has met its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (citing Fed. R. Civ. P. 56).  The Court views the record in the light most favorable to the nonmoving party and must afford that party all reasonable inferences.  Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (citing Liberty Lobby, Inc., 477 U.S. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

**B.    Count I – Unauthorized Postpetition Transfer**

The Trustee argues that the postpetition lease of the land—in which Debtor held a leasehold interest—to Elkhorn was an unauthorized transfer of property of Debtor's estate. Section 549 of the Bankruptcy Code provides in relevant part:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
>> (1) that occurs after the commencement of the case; and
>>
>> (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
>>
>>> (B) that is not authorized under this title or by the court.
>
> * * *
>
> (c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given,

3

unless a copy or notice of the petition was so filed before such transfer was so perfected.

11 U.S.C. § 549.

The Trustee alleges that Elkhorn knew about Debtor's bankruptcy filing.  Doc. 18 at 5. As evidence of this purported knowledge, the Trustee attached to his affidavit an article from AgWeek dated May 8, 2017.  Doc. 18 at 47–51.  The article includes a quotation from Kenny Johnson which evidences his knowledge of the bankruptcy as of the date of the article, May 8, 2017.[1]

Elkhorn disputes "that Elkhorn Farms had knowledge of the bankruptcy filing when the assignment of the lease was arranged between Ron McMartin and Elkhorn Farms."  Doc. 21 at 2.  It asserts that it is a good faith purchaser and paid fair equivalent value for the lease.  Kenny Johnson, an owner and partner in Elkhorn, testified by affidavit: "We did not have knowledge of Ron McMartin's bankruptcy filing or the pendency thereof until well after the bankruptcy was filed and the information came out in the local newspaper that it had occurred."  Doc. 23 at 3. Accordingly, Elkhorn argues that the Trustee may not avoid the transfer because Elkhorn meets the criteria under section 549(c).  Doc. 21 at 4.

Although the article on which the Trustee relies shows that Elkhorn became aware of Debtor's bankruptcy at some point, it does not elucidate with any specificity <u>when</u> Elkhorn

---

[1] According to the article, Kenny Johnson stated:

> "This farm really came upon us in the last few months," Kenny Johnson says in an interview with AgWeek.  "You've got to remember this has been fast.  The McMartin bankruptcy was announced in February and it was like, 'Are we going to rent this land out, or are we going to farm it?' I called up Al and said 'Al I want to farm it,' and he said, 'You can't, we don't have a farm.'  But the farm was put together.  It's pretty amazing."

Doc. 18 at 48.

4

learned of the bankruptcy in relation to Elkhorn entering its lease with Morrison Family Trust. For this reason, whether Elkhorn knew about the bankruptcy case at the time of the transfer—and whether it is therefore a good faith transferee—are genuine issues of material fact, rendering summary judgment on this cause of action inappropriate.

Further, the Trustee seeks a money judgment for the value of the transfer including rents paid, the lost lease value and profits realized from the crops Elkhorn grew in 2017. Doc. 1 at 3. He also seeks damages for the loss of the 2018 crop year because the lease between Debtor and Morrison Family Trust "was never terminated (and ran through the 2018 crop year)." Id. Specifically, the Trustee seeks $27,932.30 in damages, plus attorney fees. Doc. 18 at 9. This figure includes the value of the original lease between Debtor and Morrison, $22,000, and lost profits in the sum of $5,932.30. Id. at 8–9. The Trustee arrived at his claim for $5,932.30 in lost profits by extrapolating data from the Red River Valley 2017 Report. See id.

Elkhorn claims that it "lost money on every soybean field that was planted in 2017, when taking into account the crop inputs, seed and fertilizer prices, land rent, etc." Doc. 23 at 2. In fact, Elkhorn explains: "The price of commodities was not enough to offset the expenses that we incurred in trying to grow the crop." Id. Further, Elkhorn discounts the Trustee's valuation of profits, claiming "NDSU has general numbers from over the entire Red River Valley, however our numbers are specific to Elkhorn's operations and the fact that it did not make any money and certainly did not profit $5,932.30." Id.

Because the parties point to contradicting facts regarding lost profits, the Trustee failed to demonstrate the absence of a genuine issue of material fact regarding whether Debtor's bankruptcy estate suffered these damages. Accordingly, the Court denies the Trustee's motion for summary judgment on his cause of action under section 549.

5

### C.  Count II – Breach of Contract

To establish that the Court has jurisdiction over his breach of contract claim, the Trustee must show that this cause of action is property of the estate.  See Osherow v. Wells Fargo Home Mortg. (In re Rhinesmith), 450 B.R. 630, 632 (Bankr. W.D. Tex. 2011) (stating that a trustee lacks standing to pursue causes of action that are not property of the estate); Darrah v. Franklin Credit (In re Darrah), 337 B.R. 313, 317 (Bankr. N.D. Ohio 2005) (concluding that claims that are not property of the estate fall outside the ambit of the court's "related to" jurisdiction under 28 U.S.C. § 1334; although a debtor's rights and liabilities would be at stake in such claims, the outcome could have no conceivable impact on the administration of the estate, and any benefits resulting from the claims would inure entirely to the debtor).  Although the Trustee claims that the lease is property of the estate, he did not offer evidence or argument showing that the cause of action for the purported breach of the lease is property of the estate.

At the commencement of a bankruptcy case, an estate is created. 11 U.S.C. § 541(a). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  In Murray v. 3M Co., the court identified two Eighth Circuit tests for determining whether a postpetition cause of action is property of the estate—the "sufficiently rooted" test and the "accrual approach."  297 F. Supp. 3d 869 (E.D. Ark. 2018).  The court also recognized that some courts have developed a "blended approach."  Id. at 872 (citing In re Harber, 553 B.R. 522 (Bankr. W.D. Pa. 2016)).

Under the "sufficiently rooted" test, a cause of action is part of the bankruptcy estate when it is "'sufficiently rooted in the debtor's pre-bankruptcy past.'"  Id. at 872.  The court in Murray explained:

> The Eight [sic] Circuit has used the "sufficiently rooted" language in analyzing whether a cause of action is part of the bankruptcy estate. Longaker v. Boston Sci. Corp., 715 F.3d 658, 662 (8th Cir. 2013) (referencing In re LaSpina,

6

304 B.R. 814, 820 (Bankr. S.D. Ohio 2004) ("We find the guaranteed payments analogous to the severance payment in LaSpina, where the court held that the payments, having no relation to the debtor's post-petition services, were sufficiently rooted in the debtor's pre-petition past and were therefore part of the debtor's bankruptcy estate."); Fix v. First State Bank of Roscoe, 559 F.3d 803, 809 (8th Cir. 2009) ("at least four of the five causes of action Fix brought against the Bank in March 2006 . . . have sufficient roots in Fix's pre-bankruptcy activities to be considered property of the bankruptcy estate, even though the Bank's alleged breach of its promise occurred post-petition."). The Court in Fix relied on a case from the Supreme Court, Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966): ("[A] cause of action will be 'property of the estate' if it has sufficient roots in the debtor's pre-bankruptcy activities and is not entangled with the debtor's 'fresh start,' regardless of when the claim accrues under state law") (citing Segal at 380, 86 S.Ct. 511).

Id.

Alternatively, courts that apply the "accrual approach" look to state law to determine when a cause of action accrues for purposes of determining when a claim is property of the bankruptcy estate. Id. (discussing the Eighth Circuit Bankruptcy Appellate Panel's application of the accrual approach in Deer v. Molstad (In re Deer), 266 B.R. 772 (B.A.P. 8th Cir. 1999)). Under North Dakota law, a breach of contract is "the nonperformance of a contractual duty when due." Serv. Oil, Inc. v. Gjestvang, 2015 ND 77, ¶ 15. A cause of action for breach of contract requires "'(1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach.'" Id. (internal citations omitted). Whether there is a breach of contract is a question of fact. Id. "A party asserting a claim for breach of contract has the burden to prove these elements." Id. A cause of action for breach of a lease accrues upon the first breach. Abel v. Allen, 2002 ND 147, ¶ 12 (citing Finstrom v. First State Bank of Buxton, 525 N.W.2d 675, 677–78 (N.D. 1994)). When a cause of action accrues is generally a question of fact. Id. at ¶ 11.

The "blended approach" combines the elements of the state-law accrual test with the sufficiently-rooted analysis:

> In determining whether a claim is sufficiently developed as of the petition date to constitute property of the debtor for purposes of inclusion or exclusion from the

7

> bankruptcy estate, the Court employs what is essentially a three-step process: (1) determine the extent to which the claim is rooted in the prebankruptcy past; (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the Bankruptcy Act (now the Bankruptcy Code), the claim is more properly categorized as prepetition property that should come into the estate or a postpetition asset that the Debtor should take free of the claims of prebankruptcy creditors. . . . The extent of a claim's accrual as of the petition date is relevant to determining the extent of its prepetition roots[.]

Sikirica v. Harber (In re Harber), 553 B.R. 522, 532 (Bankr. W.D. Pa. 2016) (quoting Casey v. Grasso (In re Riccitelli)), 320 B.R. 483 (Bankr. D. Mass. 2005). The Court in Murray concluded that the plaintiff's cause of action belonged to the bankruptcy estate under all three approaches (sufficiently-rooted, accrual and blended). 297 F. Supp. 3d at 873.

If the Court employs the accrual approach, the breach of contract cause of action is not property of the estate. The Trustee asserts Morrison breached the lease with Debtor by entering the postpetition lease with Elkhorn. Morrison disputes that he breached the lease. Even if Morrison had conceded a breach, the breach was postpetition. Under the accrual approach, the cause of action is not property of the estate. Accordingly, the Trustee would lack standing and the Court would lack jurisdiction over the cause of action, requiring denial of summary judgment for the Trustee.

Under either the sufficiently-rooted or blended approach, the result is the same. Under either approach, the Trustee failed to substantiate or analyze the extent to which the purported claim is sufficiently rooted in the prebankruptcy past to show that the breach of contract cause of action is property of the estate. He has not established jurisdiction as a threshold matter.

Even if he had offered evidence and analysis supporting jurisdiction, Morrison offered evidence showing genuine issues of material fact, barring summary judgment on the underlying breach of contract cause of action. For example, Morrison disputes that he breached the lease

8

and asserts instead that he "simply allowed it to be assigned at the request of the debtor." Doc. 21 at 3.

For these reasons, the Trustee failed to demonstrate the absence of a genuine dispute as to material facts precluding the Court from entering judgment as a matter of law. His motion for summary judgment on his breach of contract cause of action is denied.

### D. Count III – Violation of the Automatic Stay

The Trustee asserts that Morrison and Elkhorn violated the automatic stay by "strip[ping] the Debtor's property interest from the bankruptcy estate in violation of 11 U.S.C. § 362(a)(3)." Doc. 1 at 4. Section 362 provides in relevant part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

\* \* \*

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

\* \* \*

> (k) (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362. As a remedy for the violation of the stay, the Trustee seeks judgment for attorney's fees incurred in this case. Doc. 18 at 8.

Assuming—without finding—that the Trustee established that Morrison and Elkhorn violated the automatic stay, he has not offered evidence sufficient to show that any violation was willful. As discussed above, the Trustee has not established when Morrison and Elkhorn learned about the bankruptcy filing. Absent this finding, the Court cannot find that Morrison and

9

Elkhorn willfully violated the stay. This remains a genuine issue of material fact barring summary judgment.

### E. Count IV – Objection to Claim

For the reasons discussed above, there remain disputed issues of material fact regarding whether the bankruptcy estate suffered damages as a result of the alleged transfer or breach of contract. Consequently, there are also disputed issues of material fact regarding whether the bankruptcy estate is made whole. To the extent the Trustee is seeking summary judgment on this cause of action, his motion is denied.

## III. Conclusion

The Court finds there are genuine disputes of material fact as to each of the Trustee's causes of action. Therefore, the Trustee's motion for summary judgment is DENIED.

The Court has considered all other arguments and deems them to be without merit.

**SO ORDERED**.

Dated this November 5, 2019.

*/s/ Shon Hastings*

SHON HASTINGS, JUDGE
U.S. BANKRUPTCY COURT